UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROBERT SAVAGE and )
RUTH SAVAGE, )
 )
    Plaintiffs, )
 )
  v. ) No. 4:08-CV-1162 CAS
 )
3M COMPANY and MINE SAFETY )
APPLIANCES COMPANY, )
 )
    Defendants. )

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Mine Safety Appliances Company's ("MSA") motion for summary judgment based on the statute of limitations. Plaintiffs oppose the motion and it is fully briefed. Because plaintiffs' claims are barred by Missouri's statute of limitations, the motion will be granted.

**I.**    **Background**

On August 8, 2008, plaintiffs filed this action seeking to recover damages for personal injuries caused by exposure to silica dust at plaintiff Robert Savage's workplace, ISP Minerals, Inc. ("ISP"). Plaintiffs allege Mr. Savage wore a Dustfoe respirator designed and manufactured by MSA during his career at ISP, and the Dustfoe respirator failed to perform properly causing plaintiff to develop "silica dust induced airway obstruction," commonly referred to as silicosis.[1] Plaintiff Robert Savage alleges three counts against defendant MSA: (1) product liability; (2) breach of

---

[1]Plaintiffs also sued defendant 3M Company, the manufacturer of a different respirator used by plaintiff Robert Savage. Plaintiffs and defendant 3M Company have settled this action.

warranty; and (3) negligence. Plaintiff Ruth Savage brings one count against defendant MSA for loss of consortium.

Defendant MSA moves for summary judgment based on Missouri's five-year statute of limitations. MSA argues Mr. Savage's silicosis was sustained and capable of ascertainment more than five years prior to the filing of plaintiffs' complaint. For the following reasons, the Court agrees.

## II.  Summary Judgment Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party

"must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

In reviewing a motion for summary judgment, this Court is required to view the facts in a light most favorable to the non-moving party and to give the non-moving party the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 587; Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). Moreover, this Court is required to resolve all conflicts in favor of the non-moving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976).

## III. Facts[2]

Plaintiffs Robert and Ruth Savage, husband and wife, filed this action on August 8, 2008. Plaintiffs allege that Mr. Savage was exposed to silica dust throughout the course of his employment at ISP from September 3, 1970 to October 10, 2003.

---

[2]This statement of facts is taken largely from MSA's Statement of Uncontroverted Material Facts in Support of Summary Judgment Based on the Statute of Limitations [Doc. 88]. Plaintiffs did not controvert many of the facts. Those facts that plaintiffs controverted were often simply recharacterized or expanded upon by plaintiffs. None of the facts adopted by the Court were specifically controverted by plaintiffs pursuant to Local Rule 4.01(E).

Mr. Savage's Knowledge of Silicosis

Mr. Savage first learned about the disease silicosis at ISP safety meetings in the 1970s or 1980s. By the mid-1990s, Mr. Savage was aware that the high silica content of the dust at ISP could cause disease. By 1998, Mr. Savage believed he was susceptible to silicosis because of his exposure to dust at ISP.

ISP employees were given annual health screenings. As part of these screenings, ISP employees filled out a health questionnaire and had chest x-rays taken. Reports generated from the screenings were given to the employees. Robert and Ruth Savage read all reports provided by ISP regarding Mr. Savage's annual health screenings.

Chest X-Rays—1998 and 2002

In 1998, the x-ray report from Mr. Savage's annual health screening reflected abnormal findings "consistent with early coal workers' pneumoconiosis or silicosis." In March of 1999, Mr. Savage filled out an annual health screening questionnaire in which he indicated he was suffering from silicosis. At deposition, Mr. Savage testified that he marked this box because "he wanted to keep an eye on my x-rays."

In 2002, Mr. Savage's chest x-ray was reported as showing results "consistent with silicosis." On January 24, 2003, plaintiff Ruth Savage sent a fax to Dr. Niesen, Mr. Savage's gastroenterologist, requesting that Dr. Niesen review Mr. Savage's abnormal chest x-ray results. The fax included the reports of two radiologists who reviewed Mr. Savage's 2002 chest x-ray. Mr. Savage testified that he and his wife had possession of the x-ray reports at that time and that he was concerned about the abnormal findings. Dr. Niesen recommended that Mr. Savage see a pulmonologist. Mr. Savage selected Dr. Peter Tuteur.

### Dr. Steele Visit—January 29, 2003

On January 29, 2003, Mr. Savage saw his physician, Dr. Henry Steele for further evaluation of his abnormal 2002 chest x-ray. Dr. Steele reviewed Mr. Savage's 2002 abnormal chest x-ray report from ISP "consistent with silicosis." Dr. Steele has no direct recollection of what he and Mr. Savage discussed on January 29, 2003, but agreed that silicosis was a topic of conversation based on his notes from this visit, in which he wrote "silicosis" in the assessment section.

### Dr. Tuteur Visit—February 21, 2003

On February 21, 2003, Mr. Savage saw the pulmonologist, Dr. Tuteur, who diagnosed Mr. Savage's silicosis. Dr. Tuteur's report from this visit explains that Robert Savage is a 50-year-old granite quarry worker referred by Dr. Niesen for further evaluation of an abnormal radiograph. Dr. Tuteur describes Mr. Savage's pulmonary history as follows:

> Pulmonary history indicates that he currently feels tired and fatigued. He can walk more than a mile on flat ground but is limited to climbing three flights of stairs before he has to stop. He has a rather frequent dry, mild, hacking cough rarely if ever associated with the expectoration of mucous. He does not wheeze or have chest pain.
>
> In 1995 annual chest radiograph was reported as showing abnormality consistent with silicosis; cannot rule out tuberculosis. Nothing was done until an annual film dated November 5, 2002, which was read similarly at category I/I. With this he has sought further medical attention.

Dr. Tuteur further describes his review of the chest radiograph, CT scan and pulmonary function studies taken on the date he examined Mr. Savage, and comes to the conclusion that "*it is unequivocally clear that Mr. Savage has simple silicosis*." (Def. SOF, Ex. 4, Dr. Tuteur Dep. at 80, Dr. Tuteur Dep. Ex. 17) (emphasis added). Dr. Tuteur provided both Dr. Niesen and Dr. Steele with copies of this report.

The report from Mr. Savage's CT scan ordered by Dr. Tuteur and taken on February 21, 2003 shows results "consistent with silicosis given the patient's clinical history." (Def. SOF, Ex. 4, Dr. Tuteur Dep. Ex. 13).

Although Dr. Tuteur had no independent recollection of the conversation, he testified that there is no doubt in his mind that on February 21, 2003, he told Mr. Savage that he had silicosis and the implication of that diagnosis was that he should discontinue exposure to silica dust. Mr. Savage testified that he never learned Dr. Tuteur's conclusion as to his lung condition and made no effort at all to follow up with Dr. Tuteur.

Dr. Ojile Visit—March 17, 2003

Shortly after he saw Dr. Tuteur, ISP sent Mr. Savage to see Dr. Joseph M. Ojile, another pulmonologist. On March 17, 2003, Mr. Savage was examined by Dr. Ojile. On the patient intake form filled out on that date, Mr. Savage indicated that the reason for the visit was that his "chest x-ray revealed silicosis." On a health history form signed by Mr. Savage and dated March 17, 2003, Mr. Savage indicated that the reason for his visit was "silicosis." The history and physical form filled out by Dr. Ojile and his staff on March 17, 2003 reflects that Mr. Savage's chief complaint was "possible silicosis." Dr. Ojile testified that Mr. Savage told him that he might have silicosis.

On March 17, 2003, Dr. Ojile spoke to Mr. Savage regarding his health history, and learned that Mr. Savage worked in an environment with exposure to silica. Dr. Ojile described a history of exposure to silica as the most important factor in diagnosing silicosis, and stated that Mr. Savage was positive for that part of a silicosis diagnosis. On this date, Mr. Savage reported to Dr. Ojile that he had shortness of breath on exertion, which Dr. Ojile testified is a symptom consistent with

silicosis. Dr. Ojile obtained a report of a CT scan performed on March 17, 2003, which revealed "scattered punctuate nodules in the upper lobe subpleural region consistent with silicosis."

On March 17, 2003, Dr. Ojile wrote "early silicosis" in the assessment section of the history and physical form filled out during that visit. He did not write any other presumptive or differential diagnosis.

### Dr. Niesen Visit—May 30, 2003

On May 30, 2003, Mr. Savage saw Dr. Niesen for a physical examination. In the office notes from this visit, Dr. Niesen wrote "silicosis." Dr. Niesen testified that she would have gotten this information from Mr. Savage.

### Dr. Ojile Visit—June 17, 2003

On June 17, 2003, Mr. Savage saw Dr. Ojile. In his progress notes from the June 17, 2003 visit, Dr. Ojile wrote a plus with a circle around it, followed by the word "silicosis" in Mr. Savage's chart. He also wrote "he'll need to be removed from silica dust" and "questions answered." Dr. Ojile does not have any specific recollection of this visit with Mr. Savage. However, he testified that his office note reveals that he discussed with Mr. Savage the fact that his CT scan, symptoms, and history of exposure to silica were consistent with silicosis.

Though Dr. Ojile has no specific recollection of the June 17, 2003 visit, he testified that he told Mr. Savage that "he very likely could have silicosis" and that silicosis was "likely going to be the diagnosis." However, he further testified that he "was withholding that last final straw." Mr. Savage testified that he does not remember what he and Dr. Ojile discussed on June 17, 2003, but that he assumes that he and Dr. Ojile discussed silicosis.

Dr. Ojile testified that on or about June 20, 2003, he received Dr. Tuteur's note diagnosing Mr. Savage's silicosis and the report of the February 21, 2003 CT scan ordered by Dr. Tuteur with results "consistent with silicosis." Dr. Ojile testified that at some point between June 17, 2003 and October 6, 2003, he drafted his consultation note concluding that Mr. Savage has silicosis. According to Dr. Ojile, he did not mail this note until October 6, 2003.

October 10, 2003

Mr. Savage testified that he did not believe he had silicosis until October 10, 2003, the date upon which ISP told him he could no longer work because his records indicated that he had silicosis.

### IV. Discussion

Plaintiffs argue that their cause of action did not accrue until Mr. Savage knew of Dr. Ojile's diagnosis of silicosis, which occurred on October 10, 2003. Plaintiffs state that Mr. Savage could not have been placed on notice that he suffered from the injury, silicosis, if his doctor did not tell him of the diagnosis and the primary physicians responsible for following up with his care did not follow-up with any discussion or treatment plan. Defendant argues that Mr. Savage's injury was sustained and capable of ascertainment before August 8, 2003.

In diversity actions where the underlying cause of action is based on state law, federal courts apply state procedural law; thus, state law dictates the appropriate statute of limitations as well as the commencement of an action. See Walker v. Armco Steel Corp., 446 U.S. 740, 751-53 (1980). Missouri's statute of limitations for product liability and personal injury claims is five years. MO. REV. STAT. § 516.120(4) (2002). A cause of action for product liability and personal injury begins to run "when the damage resulting therefrom is sustained and is capable of ascertainment." MO. REV. STAT. § 516.100. Whether damages were sustained and capable of ascertainment at a given

time is an objective standard and is a question of law. State ex rel. Gasconade County v. Jost, 291 S.W.3d 800, 804 (Mo. Ct. App. 2009); H.R.B. v. Rigali, 18 S.W.3d 440, 443 (Mo. Ct. App. 2000).

As Judge Rodney W. Sippel recently discussed in the companion case, Midkiff v. 3M Company, 2010 WL 1687123, *3 (E.D. Mo. Apr. 26, 2010), the Missouri Supreme Court has provided guidance on when an injury is capable of ascertainment. In Powel v. Chaminade College Preparatory, Inc., the Missouri Supreme Court stated damages are sustained and are capable of ascertainment as an objective matter "when the 'evidence [of damages] was such to place a reasonably prudent person on notice of a potentially actionable injury.'" Powel, 197 S.W.3d 576, at 582 (quoting Business Men's Assurance Co. of Am. v. Graham, 984 S.W.2d 501, 507 (Mo. 1999)). "A personal injury can be capable of ascertainment at the point of diagnosis. See Elmore v. Owens-Illinois, Inc., 673 S.W.2d 434, 436 (Mo. 1984) (finding that plaintiff's cause of action for personal injuries sustained from exposure to asbestos accrued on the date of his diagnosis for asbestosis); see also Ray v. Upjohn Co., 851 S.W.2d 646, 650-51 (Mo. Ct. App. 1993) (finding the date of plaintiff's diagnosis for isocyanate asthma triggered statute of limitations). But diagnoses are not always dispositive. Damages may be sustained and capable of ascertainment before a plaintiff learns of his injury or sees a physician. See Grady v. Amrep, Inc., 139 S.W.3d 585, 589 (Mo. Ct. App. 2004) (finding plaintiff's damage resulting from exposure to a toxic chemical was sustained and capable of ascertainment when she began experiencing symptoms and knew what had caused them, not when she was diagnosed with Chemical Sensitivities Syndrome); Newton v. B.P.S. Guard Servs., Inc., 833 S.W.2d 14, 16 (Mo. Ct. App. 1992) (determining that damages resulting from a gun shot were ascertainable at the moment of injury, not when plaintiff was diagnosed with paralysis of certain nerves)." Midkiff, 2010 WL 1687123 at *3.

Applying these standards to this case, the Court finds that Mr. Savage's damage was capable of ascertainment by a reasonably prudent person before August 8, 2003. Although no individual fact is dispositive, the cumulative facts make this conclusion clear. See, e.g., Midkiff, 2010 WL 1687123 at *3 (discussing cumulative facts regarding when silicosis was capable of ascertainment). Without reciting all the facts outlined above (supra, Part III), the Court notes the following facts from the record which provide the most direct evidence that Mr. Savage's damage was capable of ascertainment before August 8, 2003.

In 1998, the x-ray report from Mr. Savage's annual health screening reflected abnormal findings "consistent with early coal workers' pneumoconiosis or silicosis." In March of 1999, Mr. Savage indicated he was suffering from silicosis on his annual health screening questionnaire.

In 2002, Mr. Savage's chest x-ray was reported as showing results "consistent with silicosis." Mrs. Savage sent a fax to Mr. Savage's gastroenterologist, Dr. Niesen, and asked him to review Mr. Savage's 2002 abnormal chest x-ray. Dr. Niesen recommended Mr. Savage see a pulmonologist, and Mr. Savage selected Dr. Tuteur.

Before Mr. Savage's appointment with Dr. Tuteur, he saw his physician Dr. Henry Steele for further evaluation of his abnormal 2002 chest x-ray. Dr. Steele's notes of this visit on January 20, 2003 visit reflect that silicosis was a topic of conversation. Dr. Steele wrote "silicosis" in the assessment section.

On February 21, 2003, Mr. Savage saw Dr. Tuteur who diagnosed Mr. Savage's silicosis. Dr. Tuteur described his review of the chest x-rays, CT scan, and pulmonary function studies taken on the date he examined Mr. Savage, and came to the conclusion that "it is unequivocally clear that Mr. Savage has simple silicosis." The report from Mr. Savage's CT scan ordered by Dr. Tuteur and

taken on February 21, 2003 shows results "consistent with silicosis given the patient's clinical history."

On March 17, 2003, Mr. Savage was examined by Dr. Ojile. Mr. Savage indicated on the patient intake form that the reason for his visit was that his "chest x-ray revealed silicosis." On his health history form dated March 17, 2003, Mr. Savage indicated that the reason for his visit was "silicosis." The history and physical form filled out by Dr. Ojile and his staff reflects Mr. Savage's chief complaint was "possible silicosis." Dr. Ojile wrote "early silicosis" in the assessment section of the history and physical form filled out during this visit.

On May 30, 2003, Mr. Savage saw Dr. Niesen, who wrote "silicosis" in his office notes.

On June 17, 2003, Mr. Savage saw Dr. Ojile. In his progress notes from this visit, Dr. Ojile wrote a plus with a circle around it, followed by the word "silicosis" in Mr. Savage's chart.

Plaintiffs' response to this rather overwhelming evidence is that in 1998, a pulmonologist concluded that he was not suffering from silicosis, and that he understood no action was to be taken unless the chest x-rays "appeared to be progressing." Plaintiffs also argue that his cause of action accrued when he learned of Dr. Ojile's diagnosis on October 10, 2003. This argument misapplies the capable of ascertainment standard. Missouri has not adopted a "discovery" test to trigger the statute of limitations. Midkiff, 2010 WL 1687123 at *3 (citing Powel, 197 S.W.3d at 580-81). Moreover, the Missouri Supreme Court has rejected a subjective test for determining when an injury was "capable of ascertainment." Id. Therefore, when Mr. Savage became convinced of his injury is irrelevant. The overwhelming evidence points to the fact that Mr. Savage's silicosis was diagnosed prior to August 8, 2003.

Viewing the facts in the light most favorable to plaintiffs, the Court finds that Mr. Savage's silicosis was sustained and capable of ascertainment by a reasonably prudent person before August 8, 2003. Because plaintiffs filed their complaint more than five years after their cause of action accrued, their claims are barred as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Mine Safety Appliances Company's motion for summary judgment based upon the statute of limitations is **GRANTED**. [Doc. 89]

**IT IS FURTHER ORDERED** that all other pending motion s are **DENIED as moot**. [Docs. 78, 130, 131, 133, 134, 135, 141, 145, 146, and 149]

An appropriate Judgment will accompany this Memorandum and Order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this ___12th___ day of October, 2010.